UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:23-CV-23865-CMA

RDY STORE INC. dba 7-ELEVEN 35022B,

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE CO. and ILLINOIS UNION
INSURANCE CO.,

    Defendants.
_____/

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester") and ILLINOIS UNION INSURANCE COMPANY ("IUIC") (collectively, "Defendants") set forth the following Statement of Material Facts as to which there is no genuine dispute.

*The Underlying Lawsuit*

1.    Alfredo Cardenas ("Cardenas") initiated the Underlying Lawsuit[1] on March 21, 2023.

2.    The complaint filed by Cardenas in the Underlying Lawsuit (the "Underlying Complaint") is attached as Exhibit B to RDY's[2] declaratory judgment complaint. [ECF No. 1-2].

3.    The Underlying Complaint alleges that on or about March 9, 2022, while Cardenas was shopping at a convenience store owned and operated by RDY, Darryl White, an

---

[1] "Underlying Lawsuit" refers to the lawsuit styled *Alfredo Cardenas v. 7-Eleven Inc. and RDY Store Inc.*, Case No. 2023-012179-CA-01, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County.

[2] "RDY" refers to the Plaintiff, RDY Store Inc. dba 7-Eleven 35022B.

1

employee and/or agent of RDY, physically struck Cardenas numerous times, causing severe injury and resulting damages to Cardenas. [ECF No. 1-2 at ¶¶ 8-11].

4. Cardenas asserts claims for negligence and negligent hiring, retention and supervision against RDY and another entity, 7-Eleven Inc. [ECF No. 1-2 at ¶¶ 12-41].

5. 7-Eleven Inc. is not a party to the instant coverage action; therefore, the allegations made against 7-Eleven Inc. are not discussed further.

6. In his negligence count, Cardenas alleges that RDY had a duty to keep its customers and invitees reasonably safe from dangerous conditions and/or employees; that this duty included instituting policies and procedures for employees interacting with customers or invitees and maintaining customer safety; that RDY had a duty to train its employees on interacting with customers and maintaining customer safety; that RDY breached these duties; and as a direct and proximate result, Cardenas suffered bodily injury and resulting damages. *See id.* at ¶¶ 28-31.

7. Cardenas also asserts a claim for negligent hiring, retention and supervision against RDY, solely related to Mr. White's alleged assault and battery of Cardenas. *See id.* at ¶¶ 33-41.

8. The Underlying Complaint is devoid of any allegations that RDY is liable for Cardenas' alleged injuries by reason of selling, serving or furnishing any alcoholic beverage, or that Cardenas' injuries are by reason of such liability.

9. The Underlying Complaint solely pleads liability for RDY's alleged negligence in breaching its duty to train employees on interacting with and maintaining the safety of customers, and liability for the alleged negligent hiring, retention and supervision of Mr. White, who allegedly struck Cardenas. *See id* at ¶¶ 28-41.

10. In the Underlying Lawsuit, Cardenas propounded interrogatories asking RDY to describe "any and all policies of insurance, including excess and umbrella policies, which

you contend cover or may cover you for the allegations set forth in plaintiff's complaint[.]" *Cardenas' Interrogatories to RDY and RDY's Incorporated Responses are attached at Exhibit "A." See Exhibit A at interrogatory number 3.*[3]

11. RDY stated under oath that "[t]here are no insurance policies that cover the allegations of the complaint." *Id.*

12. The above quoted interrogatory response is correct with respect to the insurance policies issued by the Defendants, as neither policy covers the allegations of Cardenas' complaint.

### *Westchester CGL Policy*

13. Westchester issued Commercial General Liability ("CGL") Policy No. FSF15801736 002 to RDY, for the policy period of July 22, 2021 to July 22, 2022 (the "Westchester CGL Policy"). [ECF No. 1-1 at p. 4].[4]

14. The Westchester CGL Policy is attached as Exhibit A to RDY's declaratory judgment complaint. [ECF No. 1-1].

15. Coverage Part A of the Westchester CGL Policy provides certain coverage to RDY for liability for "bodily injury" caused by an "occurrence" and for which the insurance policy applies. *See* [ECF No. 1-1 at p. 91].[5]

16. Westchester has no duty to defend the insured against any "suit" seeking damages for "bodily injury" for which the insurance does not apply. *See id.*

---

[3] RDY's responses to Cardenas' interrogatories in the Underlying Lawsuit were produced by RDY during discovery in this case.
[4] The citations to the page numbers in the Westchester CGL Policy are to the blue-stamped page numbers at the top right of the document unless otherwise noted.
[5] Coverage Part B does not apply as there is no allegation of "personal and advertising injury" as defined by the Westchester CGL Policy and there is no material dispute regarding the lack of application of Coverage Part B.

17. The Westchester CGL Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [ECF No. 1-1 at p. 98].

18. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. [ECF No. 1-1 at p. 100].

19. The Westchester CGL Policy contains an Amendment of Expected Or Intended Injury Exclusion (Total Assault & Battery Coverage Exclusion) ("Total Assault & Battery Exclusion"), which states in pertinent part:

> **Assault or Battery**
>
> This insurance does not apply to:
>
> "bodily injury" . . . arising out of "assault" or "battery" or any act or omission in connection with the prevention or suppression of "assault" or "battery" by:
>
> **(1)** any insured;
> **(2)** any "employee";
> * * *
> **(5)** any patron of the insured; or
> **(6)** any other person.
>
> This exclusion applies even if negligence or other wrongdoing is alleged in the supervision, hiring, employment, training, investigation, reporting to authorities, or monitoring of others by an insured if the "occurrence" which caused the "bodily injury" or "property damage" involves "assault" or "battery" or any act or omission in connection with the prevention or suppression of "assault" or "battery" by any entity described above.

20. The Westchester CGL Policy defines "Assault" to mean "any attempted, threatened, intentional or voluntary act, whether or not provoked, which places another person in reasonable apprehension of immediate harmful contact or 'injury'." [ECF No. 1-1 at p. 83].

21. Under the Total Assault & Battery Exclusion, "Battery" is defined as "an 'assault' in which the assailant makes <u>physical contact</u>." *Id.* (emphasis added).

22. "Injury" is defined to mean "damages because of a 'bodily injury' . . . including damages for care, loss of services or loss of support." *Id.*

4

23. Coverage for the Underlying Lawsuit is excluded under the Westchester CGL Policy pursuant to the Total Assault & Battery Exclusion. This is because the Underlying Complaint demonstrate that Cardenas' claimed injuries arose out of an "assault" or "battery" by an insured, an "employee" or by any other person.

### *IUIC Liquor Liability Policy*

24. IUIC issued Liquor Liability Policy No. LQRFLF158020174 002 to RDY for the policy period of July 22, 2021 to July 22, 2022 (the "IUIC Liquor Liability Policy"). [ECF No. 1-4 at p. 3].[6]

25. The IUIC Liquor Liability Policy is attached as Exhibit D to RDY's declaratory judgment complaint. [ECF No. 1-4].

26. In accordance with its Insuring Agreement, the IUIC Liquor Liability Policy is only triggered if liability for "injury" is "imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." [ECF No. 1-4 at p. 9].

27. IUIC has no duty to defend the insured against any "suit" seeking damages for "injury" to which the insurance does not apply. *See id.*

28. Paragraph b. of the Insuring Agreement is replaced by endorsement to provide that this insurance applies to "injury" only if the "injury" is a <u>direct result</u> of the selling, serving or furnishing of any alcoholic beverage at the "insured premises". [ECF No. 1-4 at p. 31] (emphasis added).

29. The IUIC Liquor Liability Policy defines "injury" to mean "damages because of 'bodily injury' . . . including damages for care, loss of services or loss of support." [ECF No. 1-4 at p. 13].

---

[6] The citations to the page numbers in the IUIC Liquor Liability Policy are to the blue-stamped page numbers at the top right of the document unless otherwise noted.

30. "Bodily injury" is defined to mean "a. bodily injury, b. sickness, c. disease or d. mental anguish or emotional distress arising out of a., b., or c., above." [ECF No. 1-4 at p. 28].

28. There are no allegations in the Underlying Lawsuit that RDY's potential liability is by reason of the selling, serving or furnishing of any alcoholic beverage. The Underlying Lawsuit also does not allege any injuries that are the direct result of the selling, serving or furnishing of any alcoholic beverage. Instead, Cardenas solely claims to have suffered injuries as a result of being stricken by RDY's employee. Thus, the Underlying Lawsuit does not trigger the Insuring Agreement of the IUIC Liquor Liability Policy.

Respectfully submitted,

**KENNEDYS CMK, LLP**
100 Southeast Third Street
Regions Bank Building, Suite 806
Fort Lauderdale, FL 33394
Tel.: (305) 371-1111

By: *s/ Kristen D. Perkins*
**KRISTEN D. PERKINS**
Florida Bar No.: 611816
**NICOLE CASTAÑO**
Florida Bar No.: 104934
Kristen.Perkins@KennedysLaw.com
Nicole.Castano@KennedysLaw.com
KDPservice@KennedysLaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed electronically with the Court using the CM/ECF system, which action will cause automatic electronic notification of the filing from the Court to be served upon all parties who have registered for electronic service with this Court's e-filing portal on this 23rd day of July, 2024.