UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:23-CV-23865-CMA

RDY STORE INC. dba 7-ELEVEN 35022B,

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE CO. and ILLINOIS UNION
INSURANCE CO.,

    Defendants.
_____/

### DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester") and ILLINOIS UNION INSURANCE COMPANY ("IUIC") (collectively, "Defendants"), pursuant to rule 56, *Fed. R. Civ. P.*, file their Motion for Final Summary Judgment against Plaintiff, RDY STORE INC. dba 7-ELEVEN 35022B ("RDY").

### INTRODUCTION

This declaratory judgment action arises from an incident that allegedly occurred on March 9, 2022, when Alfredo Cardenas ("Cardenas") claims he was physically struck numerous times by RDY's employee at a convenience store. Defendants are entitled to summary judgment because the allegations of the Underlying Lawsuit[1] do not give rise to a duty to defend under the plain language of the relevant insurance policies. Consequently, there is no coverage as a matter of law.

### MEMORANDUM OF LAW

    *I.*    *Summary Judgment Standard*

---

[1] "Underlying Lawsuit" refers to the lawsuit styled *Alfredo Cardenas v. 7-Eleven Inc. and RDY Store Inc.*, Case No. 2023-012179-CA-01, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County.

Summary judgment should be rendered when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007); *Fed. R. Civ. P.* 56(a). The movant bears the burden of demonstrating there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact. *Id.* at 324.

## II.  Principles of Policy Interpretation[2]

An insured bears the initial burden of proving that a loss is covered under a policy. *See Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1068 (Fla. 3d DCA 2017). Where policy language is clear and unambiguous, the language must be construed in accordance with the plain language of the policy. *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 33 (Fla. 2000); *State Farm Mut. Auto Ins. Co. v. Menendez*, 70 So. 3d 566, 69-70 (Fla. 2011) (citing *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). "The scope of insurance coverage is defined by the policy language, which is interpreted 'in light of the skill and experience of ordinary people, and given its everyday meaning. Clear and unambiguous provisions, whether basic policy provisions or exclusions, should be enforced according to their terms.'" *Dickson v. Econ. Premier Assur. Co.*, 36 So. 3d 789, 790 (Fla. 5th DCA 2010) (internal citations omitted).

An insurer's duty to defend is generally analyzed by examining the allegations of the complaint filed against the insured. *See Lime Tree Vill. Community Club Ass'n, Inc. v. State*

---

[2] Florida law applies to policy interpretation because the Westchester CGL Policy and IUIC Liquor Liability Policy were delivered to RDY in Florida and issued pursuant to Florida Surplus Lines Law. *Adolfo House Distributing Corp. v. Travelers Property and Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001) (Under Florida's choice of law rules, insurance contracts are "governed by the law of the place of making, which is generally considered to be the place where the policy is delivered."). Thus, Florida case law is cited herein.

*Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). Insurance companies may rely on the allegations of the underlying complaint when determining their duty to defend. *Holmes v. Mount Vernon Fire Ins. Co.*, No. 208CV415FTM29DNF, 2009 WL 10669949, at *3 (M.D. Fla. June 22, 2009). There is no duty to defend when the pleading shows the non-existence of coverage or the applicability of a policy exclusion. *See Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979). The duty to defend is broader than the duty to indemnify. *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Ins. Co.*, 32 F. Supp. 3d 1226, 1230 (S.D. Fla. 2014). Thus, if there is no duty to defend, there necessarily can be no duty to indemnify. *Id.*

### III. The Total Assault & Battery Exclusion Precludes Coverage Under The Westchester CGL Policy[3].

The Total Assault & Battery Exclusion in the Westchester CGL Policy expressly precludes coverage for injuries "arising out of" "assault" and/or "battery" by any insured, by any "employee", or by any other person. SMF ¶ 16[4]. The Total Assault & Battery Exclusion further provides that:

> [t]his exclusion applies even if negligence or other wrongdoing is alleged in the supervision, hiring, employment, training, investigation, reporting to authorities, or monitoring of others by an insured if the "occurrence" which caused the "bodily injury" or "property damage" involves "assault" or "battery" or any act or omission in connection with the prevention or suppression of "assault" or "battery" by any entity described above.

*Id.*

Florida courts have applied similar exclusions to negligence claims against insureds which arise out of an underlying assault or battery. *See Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 404 (Fla. Dist. Ct. App. 1998); *Miami Beach Entertainment,*

---

[3] "Westchester CGL Policy" refers to Commercial General Liability ("CGL") Policy No. FSF15801736 002, issued by Westchester to RDY for the policy period of July 22, 2021 to July 22, 2022.

[4] Pursuant to Local Rule 56.1, this Motion is accompanied by a separately filed Statement of Material Facts, cited throughout as "SMF".

*Inc. v. First Oak Brook Corp. Syndicate,* 682 So.2d 161, 162 (Fla. 3d DCA 1996) (summary judgment based upon policy exclusion is proper where claim based on negligence arose out of assault and battery); *Britamco Underwriter's, Inc. v. Zuma Corp.,* 576 So.2d 965, 965 (Fla. 5th DCA 1991) (finding no coverage where claim arose from an assault and battery and the policy excluded coverage for assault and battery); *Wilshire Ins. Co. v. Poinciana Grocer, Inc.*, 151 So. 3d 55, 57 (Fla. 5th DCA 2014) ("because the [insurance] contract expressly provides [that] claims arising out of battery, including negligence, are not covered, we reverse the order finding a duty to defend[.]").

The term "arising out of" is interpreted broadly and unambiguously as meaning "originating from," "having its origin in," "flowing from," or "having a connection with." *Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005); *see also Great American Alliance Ins. Co. v. Monte Carlo of Miami Condominium, Inc.*, No. 22-21238, 2023 WL 9102199 at *3 (S.D. Fla. Feb. 22, 2023) (internal citations omitted) ("Florida courts have interpreted the phrase 'arising out of' to require only 'some level of causation greater than coincidence' . . . . As a result, derivative claims sounding in negligence are encompassed by this broad lead-in language.").

The Underlying Complaint[5] demonstrates that Cardenas' claimed injuries arise out of an "assault" or "battery" by an insured, an "employee" or any other person. Virtually all of Cardenas' factual allegations are set forth in paragraph 11 of the Underlying Complaint, which states that on or about "March 9, 2022, while Mr. Cardenas was shopping at the Store, an employee and/or agent of the Store, Darryl White, physically struck Mr. Cardenas numerous times, causing severe injury and resulting damages to Mr. Cardenas." [ECF 1-2 at ¶ 11]. These allegations, including that Cardenas was "physically struck . . . numerous times[,]" clearly meet the policy definitions of "assault" and "battery", where  "assault" is defined as "any

---

[5] "Underlying Complaint" refers to the Complaint filed by Cardenas in the Underlying Lawsuit.

attempted, threatened, intentional or voluntary act, whether or not provoked, which places another person in reasonable apprehension of immediate harmful contact or 'injury'", and where "battery" as "an 'assault' in which the assailant makes **physical contact**."[6] SMF ¶¶ 17-18.

RDY cannot avoid application of the exclusion by arguing that it has been sued for negligence and negligent hiring, retention and supervision. SMF ¶¶ 4, 7 and 8. The Total Assualt & Battery exclusion expressly applies "even if negligence or other wrongdoing is alleged in the supervision, hiring, employment, training, investigation, reporting to authorities, or monitoring of others by an insured[.]" SMF ¶ 16. Florida courts have also applied similar exclusions to negligence claims, as discussed above. *Perrine Food Retailers, Inc.*, 721 So. 2d at 404; *Miami Beach Entertainment, Inc.*, 682 So.2d at 162; *Britamco Underwriter's, Inc.*, 576 So.2d at 965; *Poinciana Grocer, Inc.*, 151 So. 3d at 57; *Great American Alliance Ins. Co.*, 2023 WL 9102199 at *3-*4.

Throughout this litigation, RDY has incorrectly relied on *Colony Ins. Co. v. Barnes*, 189 Fed. Appx. 941 (11th Cir. 2006) to argue that there is an "intent" element for all assault and battery exclusions, regardless of the policy language used. *See* [ECF No. 1 at ¶ 19; D.E. 29 at p. 3-5; D.E. 50 at p. 5]. RDY also claims that the Underlying Lawsuit "does not allege any intent at all." [D.E. 50 at p. 5]. This is plainly incorrect.

In *Colony Ins. Co. v. Barnes*, the terms "assault" and "battery" were not defined by the insurance policy at issue. 189 Fed. Appx. 941, 943 (11th Cir. 2006). Because those definitions were absent from the policy, the Eleventh Circuit looked at the definitions of "assault" and "battery" under Florida law, which places an emphasis on the "intent" element. *Id*. at 943. Here, the Westchester CGL Policy expressly defines "assault" and "battery" (see above), and those definitions **do not include** an intent element. SMF ¶¶ 17-18. Accordingly, this matter is

---

[6] Unless otherwise stated, all emphasis herein is supplied.

akin to *Miami Beach Entertainment, Inc.* (cited above) and those cases where courts have applied the plain language of "Assault and Battery" exclusions to similar facts to preclude coverage as a matter of law. 682 So. 2d at 162*; Perrine Food Retailers, Inc.*, 721 So. 2d at 404; *Britamco Underwriters, Inc.*, 576 So. 2d at 965; *AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1341 (M.D. Fla. 2019); *Harris v. Miami-Dade County Dept. of Corrections and Rehabs.*, 160 Fed. Appx. 814, 816 (11th Cir. 2005); *First Mercury Ins. Co. v. Sudderth*, Fed. Appx. 826, 829 (11th Cir. 2015).

Additionally, Florida courts have determined that an "offensive contact" constitutes a battery as a matter of law. *See AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1341 (M.D. Fla. 2019) (finding that bouncer intended to make offensive contact with invitee of insured nightclub by grabbing invitee without warning, thus constituting battery under Florida law and triggering exclusion under surplus commercial general liability policy); *See also Harris v. Miami-Dade County Dept. of Corrections and Rehabs.*, 160 Fed. Appx. 814, 816 (11th Cir. 2005) (testimony that officer grabbed plaintiff around the waist behind, and that she and the officer fell to the ground and he remained on top of her while she was face down supported jury finding of battery); *First Mercury Ins. Co. v. Sudderth*, 620 Fed. Appx. 826, 829 (11th Cir. 2015) (holding that placing the victim in a "bearhug" and dragging her out the front door, while she was "kicking and flailing" was sufficient to conclude that the touching was a battery); *Poinciana Grocer, Inc.*, 151 So. 3d at 56-57 (allegations that claimant was "attacked and brutally stabbed" constituted a battery as a matter of law, and thus insurer had no duty to defend where policy excluded claims "arising from an underlying battery[.]").

Pursuant to the above cited authorities, the Underlying Lawsuit alleges an offensive contact, and thus a "battery", in accordance with the plain policy terms **and** established Florida precedent since Cardenas claims he was "physically struck numerous times" by RDY's employee, "causing severe injury and resulting damages[.]" [ECF 1-2 at ¶ 11].

RDY alleges in its declaratory judgment complaint that Westchester "looked beyond the four corners of the complaint . . . to deny coverage . . . . In particular, the Denial Letter focused on a police report . . . that indicates that the injury resulted as a result of a battery." [ECF No. 1 at ¶¶ 15-16]. The referenced "Denial Letter" is attached to RDY's complaint and consists of a pre-suit correspondence dated June 14, 2023, in which Westchester explained that Cardenas' claim is not covered. [ECF No. 1-3]. The referenced "police report" refers to the Arrest Affidavit created by the City of Miami Police Department for the underlying incident. The Arrest Affidavit states that RDY's employee/Cardenas' alleged assailant, Darrly White, was arrested for aggravated battery. [ECF No. 45-1 at p. 6].

The fact that Westchester's June 14, 2023 correspondence mentioned the Arrest Affidavit, which Westchester reviewed as part of its claim investigation, is not legally significant in this coverage action. The letter is outside of the pleadings, and thus does not bear on the determinative issue of whether Westchester has a duty to defend (it does not). *Trailer Bridge, Inc. v. Illinois Nat Ins. Co.*, 657 F. 3d 1135, 1141 (11th Cir. 2011) (internal quotes omitted) (insurer's "duty to defend an insured is determined solely from the allegations in the complaint against the insured[.]"); *see also Baquero v. Lancet Indem. Risk Retention Group Inc.*, No. 12-24105-CIV, 2013 WL 5237740 (S.D. Fla. Sept. 17, 2013) (insurer was not limited to policy terms cited in pre-suit coverage letter when defending coverage action because requiring "insurers to adhere to the exacting early precision and continued lingual consistency in their denials of coverage letters and subsequent litigation proceedings as Plaintiff would like this Court to do would" be improper.).

RDY's declaratory judgment complaint also fails to mention that on July 14, 2023, Westchester sent a subsequent coverage correspondence to RDY **acknowledging receipt** of the Complaint filed in the Underlying Lawsuit, and explaining that the "allegations against RDY in the Complaint are excluded under the Assault or Battery Exclusion." For this Court's

7

reference, a copy of that letter is attached hereto at Exhibit "A."

Moreover, Florida courts have found that in certain circumstances, an insurance carrier may consider extrinsic facts if those facts are undisputed, and had they been pled in the underlying complaint, they clearly would have placed the claims outside the scope of coverage. *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1361 (S.D. Fla. 2019), aff'd, 797 F. App'x 518 (11th Cir. 2020) quoting *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323-1324 (11th Cir. 2014) ("*Stephens*") citing *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026 (Fla. Dist. Ct. App. 1989) ("*Nateman*") (recognizing and applying exception on issue of who is an insured); *see also*, *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. Dist. Ct. App. 1995) ("*Keen*") (consideration of uncontroverted fact not contained in underlying complaint permitted in determining duty to defend where "[t]he insured conceded to the carrier shortly after the incident that a critical and objective fact placed any claim beyond coverage."); *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1144, 1146, 1150 (M.D. Fla. 2005) ("*STD Enterprises*") (equitable departure from the general treatment of a duty to defend because employee failed to mention in his complaint that he was using vehicle for business purposes, a fact that would have barred coverage under the exclusion.).

RDY does not appear to dispute the facts set forth in the Arrest Affidavit. In fact, RDY is **relying** on the Arrest Affidavit to support its affirmative defenses in the Underlying Lawsuit, including that Cardenas was "injured during the commission or attempted commission of a forcible felony, as evidenced by the [Arrest Affidavit] . . . . In particular, [Cardenas] was shoplifting[.]" [D.E. 45-1 at p. 2]. Thus, the Arrest Affidavit supports applying the Total Assualt & Battery exclusion since RDY's employee/Cardenas' alleged assailant was arrested for aggravated battery.

However, most importantly, and regardless of the Arrest Affidavit, the **allegations** of

8

the Underlying Complaint fall squarely within the plain language of the Total Assault & Battery exclusion. Consequently, Westchester does not have a duty to defend as a matter of law.

RDY has also argued that the Westchester fails to "take into consideration that [RDY's employee] acted in self-defense." [D.E. 50 at p. 6]. This argument is unavailing for several reasons. First and foremost, the "self-defense" argument is not reflected in any allegation of the Underlying Complaint, which controls whether Westchester has duty to defend (it does not). Instead, the "self-defense" argument stems from RDY's affirmative defenses to the Underlying Lawsuit, which **do not** control Westchester's duty to defend. *Trailer Bridge, Inc.*, 657 F. 3d at 1141 (internal quotes omitted) (insurer's duty to defend is not determined by "the insured's version of the facts or the insured's defenses" to the cause of action against it.).

The self-defense argument is also irrelevant because the Total Assault & Battery Exclusion also does not contain any exception for "bodily injury" arising out of an "assault" or "battery" committed in self-defense. To the contrary, the exclusion expressly applies "whether or not [the underlying assault or battery was] provoked." [ECF No. 1-1 at p. 82-83].

### IV.    *The Insuring Agreement of the IUIC Liquor Liability Policy Is Not Triggered*

The allegations in the Underlying Lawsuit fail to trigger the Insuring Agreement of the IUIC Liquor Liability Policy, which provides that IUIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." [ECF No. 1-4 at p. 9]. The "insurance applies to 'injury' only if: the 'injury' is a direct result of the selling, serving or furnishing of any alcoholic beverage at the 'insured premises.'" [ECF No. 1-4 at p. 31].

Florida courts have regularly held that similar insuring agreements are only implicated where the complaint against the insured alleges liability by reason of the sale, service, or

9

furnishing of alcoholic beverages. *See e.g., Clarendon Am. Ins. Co. v. Burlington Ins. Co.,* 677 F. Supp. 2d 1317 (S.D. Fla. 2009) (liquor liability insurer did not owe coverage for settlement of patron's action that alleged assault and battery upon patron by other patrons where complaint did not allege liquor liability); *Holmes v. Mount Vernon Ins. Co.*, Case No. 2:08–cv–415–FtM–29DNF, 2009 WL 10669949 at *3-4 (M.D. Fla. June 22, 2009) (holding that because the underlying complaint did not contain allegations that the accident was related to the sale, service, or furnishing of alcoholic beverages to the plaintiff, or that the plaintiff was intoxicated, or that the insured business acted negligently in furnishing the plaintiff with alcohol, the defendant insurer correctly determined that it had no duty to defend).

In *Holmes*, the claimant, Michael Holmes ("Holmes"), was injured in a trip-and-fall accident while on the premises of Brigand's Steak and Seafood Grille ("Brigand's"). *Id.* at *1. Holmes filed a complaint against Brigand's alleging that Brigand's breached duties to reasonably inspect the premises, to warn of dangerous conditions, **and** to "ensure that intoxicated patrons [were] escorted safely from the premises." *Id.* Relying on this latter statement, Brigand's argued that its liquor liability policy was triggered. Like the IUIC Liquor Liability Policy, Brigand's liquor liability policy solely provided coverage for liability imposed "by reason of the selling, serving, or furnishing of alcoholic beverages." *Id.* at *2.

The *Holmes* court found that the underlying complaint **did not seek** to impose liability on the insured by reason of the sale, service or furnishing of alcohol. *Id*. at *3. There were no allegations that Holmes was **"**intoxicated or that alcohol played a role in [the] injury". To the contrary, Holmes' "singular reference to a duty to intoxicated persons, without any factual allegation that [the plaintiff] was such a person, is simply the use of a 'buzz word' insufficient to trigger [the insurer's] duty to defend." *Id*. Brigand's was not permitted to transform the underlying premises liability case into one that would trigger coverage for liquor liability where no theory of liability connected with the sale, service or furnishing of alcohol was alleged. *Id*.

10

at *3.

Like the complaint in *Holmes*, the Underlying Complaint **does not seek** to impose liability on RDY **by reason of** the sale, service, or furnishing of alcoholic beverages, and certainly does not allege that Cardenas' injuries **directly resulted** from the selling, serving, or furnishing of any alcoholic beverage.[7] The sole liability asserted against RDY is for its alleged negligence in training its employees on interacting with and maintaining the safety of customers, and the negligent hiring, retention and supervising of Darrly White, who allegedly physically struck Cardenas numerous times. [ECF No. 1-2]. The terms "alcohol", "liquor", "intoxication" or "alcoholic beverage" do not even appear in the Underlying Complaint. *See id.*

Seemingly aware that the Underlying Complaint does not trigger the IUIC Liquor Liability Policy's insuring agreement, RDY has alleged in **this lawsuit** that "[w]hile the **[Underlying] Complaint does not mention it**, the injury occurred while Cardenas was purchasing liquor, in particular, Cardenas was purchasing a Modelo beer." [ECF 1 at ¶ 25]. However, the allegations of RDY's declaratory judgment complaint do not control whether IUIC has a duty to defend – the Underlying Complaint does. *State Farm Fire and Cas. Co. v. Steinberg*, 393 F. 3d 1226, 1230 (11th Cir. 2004). And again, the Underlying Complaint contains no allegations asserting any liability by reason of the sale, service or furnishing of any alcoholic beverage. *See* [ECF No. 1-2]. *See id.* Cardenas also does not allege any injuries directly resulted from the selling, serving or furnishing of any alcoholic beverage. Instead, Cardenas claims to have suffered injuries as a result of being struck by Darrly White, who was

---

[7] The IUIC Liquor Liability Policy is even more restrictive than the policy addressed in *Holmes*. As noted above, paragraph b. of the Insuring Agreement to the Illinois Union Liquor Liability Policy is replaced by endorsement to expressly provide that this insurance applies to "injury" only if the "injury" is a **direct result** of the selling, serving or furnishing of any alcoholic beverage at the "insured premises".

11

not "reasonably fit for [his] job at [RDY's] Store and/or posed a safety risk to customers and invitees." [ECF No. 1-2 at ¶ 37].

RDY cannot create coverage by inserting allegations into its declaratory judgment complaint that do not exist in the Underlying Complaint, or by relying on unpled facts and inferences. *See id.* at 1144 (rejecting insured's argument that the pleadings raised an "unavoidable inference" of a covered advertising injury because the complaint filed against the insured failed "to allege an advertising idea belonged in any way to another entity[,]" and thus no covered advertising injury was implicated.).

Cardenas' theory of liability against RDY also is not based on or tied to the particular item he may have been shopping for on the date of the underlying incident. Instead, Cardenas claims that RDY negligently trained its employees on interacting with and maintaining the safety of customers, and negligently hired, retained and supervised Darrly White. [ECF No. 1-2]. That alleged negligence is not related to the sale, service or furnishment of any particular item, including any alcoholic item.

It also appears that RDY did not have a good faith basis to allege in this lawsuit that Cardenas "was purchasing a Modelo beer" when his injury occurred. As noted above, the Underlying Complaint does not mention alcohol in any way. RDY stated that it has "no personal knowledge" of how the underlying incident happened when responding to interrogatories in this lawsuit. RDY's interrogatory responses in this action are attached hereto at Exhibit "B". RDY is also defending the Underlying Lawsuit on the basis that Cardenas was **shoplifting** at the time of his injury, "as evidenced by" the Arrest Affidavit. [ECF No. 45-1 at p. 2].

Although RDY's defenses to the Underlying Lawsuit do not determine whether IUIC has a duty to defend (it does not), IUIC notes that injuries related to shoplifting alcohol would not trigger the Insuring Agreement of the IUIC Liquor Liability Policy. The policy applies to

"injury" **only if** "liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." SMF ¶ 23. If a shoplifting occurred as claimed by RDY, then RDY **clearly did not** sell, serve or furnish alcohol to Cardenas. The policy also only applies to "injury" if the injury is a **direct result** of the selling, serving or furnishing of any alcoholic beverage. SMF ¶ 25. Again, the "injury" alleged to have been sustained by Cardenas is the direct result of being stricken numerous times by a dangerous employee of RDY, **and not** the direct result of the sale, service, or furnishing of alcohol – or even the direct result of shoplifting such alcohol.

## CONCLUSION

For all of the foregoing reasons, Defendants are entitled to judgment as a matter law. Coverage for the Underlying Lawsuit is plainly excluded by the Westchester CGL Policy's Total Assault & Battery Exclusion, and the Underlying Lawsuit does not trigger the Insuring Agreement of the IUIC Liquor Liability Policy.

Respectfully submitted,

**KENNEDYS CMK, LLP**
100 Southeast Third Street
Regions Bank Building, Suite 806
Fort Lauderdale, FL 33394
Tel.: (305) 371-1111

By: *s/ Kristen D. Perkins*
**KRISTEN D. PERKINS**
Florida Bar No.: 611816
**NICOLE CASTAÑO**
Florida Bar No.: 104934
Kristen.Perkins@KennedysLaw.com
Nicole.Castano@KennedysLaw.com
KDPservice@KennedysLaw.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the foregoing was filed electronically with the Court using the CM/ECF system, which action will cause automatic electronic notification of the filing from the Court to be served upon all parties who have registered for electronic service with this Court's e-filing portal on this 23rd day of July, 2024.