UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23865-CIV-ALTONAGA/Reid

**RDY STORE INC.**,

    Plaintiff,
v.

**WESTCHESTER SURPLUS LINES
INSURANCE COMPANY CO.**; *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Westchester Surplus Lines Insurance Company ("Westchester Surplus") and Illinois Union Insurance Company's ("Illinois Union['s]") Motion for Final Summary Judgment [ECF No. 58], filed on July 23, 2024. Plaintiff, RDY Store Inc. filed a Response [ECF No. 64]; to which Defendants filed a Reply [ECF No. 68]. The Court has carefully considered the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted.

### I. BACKGROUND

The facts of this case remain largely unchanged from the version of events recounted in the Court's January 19, 2024 Order [ECF No. 40]. Plaintiff is a Florida corporation operating a 7-Eleven store in Florida. (*See* Compl. [ECF No. 1] ¶ 1). Defendants are insurance companies that issued Plaintiff policies covering general and liquor-related liability, respectively; and — in certain circumstances — the costs for defense against third-party civil suits. (*See id.* ¶¶ 8–9, 20–21).

---

[1] The parties' factual submissions include Defendants' Statement of Material Facts [ECF No. 57] ("SOF"); Plaintiff's Response to Defendants' Statement of Material Facts [ECF No. 63] ("Resp. SOF"); and Defendants' Reply to Additional Facts . . . [ECF No. 69] ("Reply SOF").

Both policies define the scope of their coverage.  Westchester Surplus's general liability policy (the "General Liability Policy") excludes coverage for "[b]odily injury . . . arising out of assault or battery . . . by[] . . . any employee[.]"  (*Id.*, Ex. 1, General Liability Policy [ECF No. 1-1] 82 (alterations added; quotation marks omitted)).[2]  The Westchester Policy defines "assault" as "any attempted, threatened, intentional or voluntary act, whether or not provoked, which places another person in reasonable apprehension of immediate harmful or offensive contact or injury"; and "battery" as "an assault in which the assailant makes physical contact."  (*Id.* 83 (quotation marks omitted)).

Illinois Union's liquor liability policy (the "Liquor Liability Policy") specifies Illinois Union will defend Plaintiff against suits where liability for damages resulting from injury "is imposed . . . by reason of the selling, serving or furnishing of any alcoholic beverage."  (Compl., Ex. 4, Liquor Liability Policy [ECF No. 1-4] 9 (alteration added)).  It further clarifies that the term "injury" covers any injuries arising from the "direct result of selling, serving or furnishing of any alcoholic beverage[.]"  (*Id.* 31 (alteration added; quotation marks omitted)).

On March 9, 2022, Alfredo Cardenas shoplifted a bottle of beer from Plaintiff's store, prompting one of Plaintiff's employees to "physically str[i]k[e] [him] numerous times" and cause him severe injury.  (Compl. ¶ 12 (alterations added; citation omitted)).  According to an Incident Report and Complaint/Arrest Affidavit ("Report and Affidavit") regarding the incident, Cardenas was seen on a surveillance video shoplifting the beer.  (*See* Mot. J. Pleadings, Ex. 1, Composite [ECF No. 45-1] 8).  Plaintiff's employee approached Cardenas and asked him to return the beer.  (*See id.*).  Then, claiming he felt threatened after Cardenas touched his cheek without his permission, the employee "punch[ed] [Cardenas] on the back of his head as he was leaving the

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

store." (*Id.* 9 (alterations added)). Plaintiff's employee continued striking Cardenas, ultimately rendering him unconscious. (*See id.*).

On March 21, 2023, Cardenas sued Plaintiff, alleging negligent hiring, training, and retention of the employee. (*See* Compl. ¶ 11; *id.*, Ex. 2, Cardenas Compl. [ECF No. 1-2]). Plaintiff asked Defendants to defend it against Cardenas's suit, but Defendants declined. (*See* Compl. ¶¶ 13–14, 26, 28). Westchester Surplus declined to defend Plaintiff under the General Liability Policy because it believed Cardenas was injured as the result of an assault or battery. (*See id.*, Ex. 3, Westchester Surplus Denial Letter [ECF No. 1-3] 2). Illinois Union also declined to defend Plaintiff. (*See* Compl. ¶ 28).[3]

On October 10, 2023, Plaintiff filed a Complaint seeking declaratory relief. (*See id.* 2–5). In Count I, Plaintiff seeks a declaration that it is entitled to coverage under the General Liability Policy and that Westchester Surplus must defend it against Cardenas's suit; in Count II, Plaintiff seeks the same relief regarding Illinois Union and the Liquor Liability Policy. (*See id.*). Defendants now seek final summary judgment. (*See generally* Mot.).[4]

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled

---

[3] Plaintiff alleges Illinois Union denied coverage under a non-existent assault and battery exclusion but does not attach a copy of Illinois Union's denial letter. (*See* Compl. ¶¶ 28–30 (citing Westchester Surplus Denial Letter)).

[4] Defendants previously filed Motions to Dismiss [ECF No. 15] and for Judgment on the Pleadings [ECF No. 45], both of which the Court denied (*see* Jan. 19, 2024 Order (denying Motion to Dismiss); July 24, 2024 Order [ECF No. 59] (denying Motion for Judgment on the Pleadings)).

to judgment as a matter of law. *See id.* 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (alteration added; quotation marks omitted; quoting Fed. R. Civ. P. 56(c)(1)).

### III.  DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's requests for declaratory relief. (*See generally* Mot.; Reply). The Court first addresses a threshold issue involving the Report and Affidavit and then considers each Policy in turn.

***Report and Affidavit.***  Before the Court can evaluate the parties' arguments, it must determine what facts are properly before it — namely, whether the Report and Affidavit can be considered. Defendants first attached the Report and Affidavit to their Motion for Judgment on the Pleadings; at the time, the parties seemed hesitant to rely upon it in making their arguments.

4

(*See* Composite 5–11; *see also generally* Mot. J. Pleadings; Resp. Mot. J. Pleadings [ECF No. 50]; Reply Mot. J. Pleadings [ECF No. 51]). On the present Motion, Plaintiff urges the Court to consider the Report and Affidavit. (*See* Resp. 10–14). Defendants hedge their bets; they argue they are entitled to summary judgment even without the Report and Affidavit but insist it supports their position and lay out a basis for its consideration. (*See* Mot. 7–9; Reply 7–8). The Court is persuaded the Report and Affidavit may be considered.

Generally, a court "may consider other materials in the record" when ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).[5] Yet, under Florida law, "an insurance company's duty to defend an insured is determined solely from the allegations in the complaint"; the Court may not consider "the actual facts of the cause of action against the insured, [or] the insured's version of the facts or the insured's defenses." *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1360 (S.D. Fla. 2019) (alteration added; quotation marks and footnote call number omitted). Put another way, Defendants' duty to defend must arise from "the eight corners" of the Cardenas Complaint and the insurance Policies at issue. *Id.* The Report and Affidavit falls outside those eight corners.

An exception to the rule exists, however: "Florida courts have found that in special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of

---

[5] No party challenges the admissibility or veracity of the Report and Affidavit; in fact, all parties cite case law supporting its admission. (*See* Mot. 7–9; Resp. 9–14; Reply 7–8). Further, as Plaintiff notes, the Report and Affidavit is likely a public record admissible under the hearsay exception of Federal Rule of Evidence 803(8). (*See* Resp. SOF ¶¶ 8, 31). Where evidence could be reduced to admissible form and is not challenged by any party, it is properly considered on a motion for summary judgment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 n.37 (11th Cir. 2012).

coverage." *Id.* (alteration adopted; quotation marks and footnote call number omitted).[6] The Report and Affidavit falls within this exception, and, indeed, all parties cite the exception approvingly. (*See* Mot. 8; Resp. 10–14). The Court is thus satisfied that, in resolving the Motion, it can look to the Report and Affidavit and its contents.

With that, the Court turns to the two Policies at issue.

***General Liability Policy.*** First, Defendants argue Westchester Surplus's General Liability Policy does not apply under a straightforward reading of its terms. The Policy "expressly precludes coverage for injuries 'arising out of' 'assault' and/or 'battery[.]'" (Mot. 3 (quoting SOF ¶ 16)). Because, as Defendants see it, the claim here arises out of an assault or battery by Plaintiff's employee, the exclusion applies, and the Policy provides no coverage. (*See id.* 3–9). Plaintiff, focusing on the Cardenas Complaint's allegations, insists the exclusion does not apply because no one alleges its employee "intended to strike [] Cardenas, or otherwise make him apprehensive that violence was imminent." (Resp. 5 (alteration added)). Defendants have the better argument.

The General Liability Policy defines "assault" as "attempted, threatened, intentional or voluntary act[s]" that "place[] another person in reasonable apprehension of immediate harmful or offensive contact[.]" (General Liability Policy 83 (alterations added)). By including "attempted, threatened, [] or voluntary act[s]" in addition to "intentional" ones, it apparently excludes all offensive contact — other than completely involuntary acts — from coverage. (*Id.* (alterations added)). To the extent intent is relevant, the Policy's language does not require intent to harm, just intent to make offensive contact. (*See id.*).

---

[6] The exception usually applies to facts that would *remove* claims from coverage. *See Mt. Hawley*, 383 F. Supp. 3d at 1361. Plaintiff argues, in conclusory fashion, that the exception should also be applied where extrinsic evidence would bring claims *within* the insurer's duty to defend. (*See* Resp. 10). Because, as explained below, the facts in the Report and Affidavit are insufficient to bring Cardenas's claim within Defendants' duty to defend, the Court need not resolve this legal question.

This reading of the Policy is in accord with how courts have interpreted similar provisions. Plaintiffs argue that courts — including the Undersigned — have refused to apply assault and battery exclusions where the underlying complaints failed to allege intent. (*See* Resp. 5 (collecting cases)). But Plaintiff overstates the reach of these cases; each dealt with a narrow factual scenario in which no intent of any kind — including intent to make offensive contact at all, much less intent to harm — was alleged. (*See id.*).[7] Moreover, as Defendants note, Plaintiff's cited cases also interpreted policies that incorporated more stringent state law definitions of "assault" and "battery." (*See* Reply 4–5).[8] Where, as here, a contractual assault and battery exclusion does not require intent to harm, Florida courts will not separately require it. (*See* Mot. 3–4 (collecting cases)).[9] Similarly, here, the assault and battery exclusion applies if Plaintiff's employee

---

[7] *See Colony Ins. Co v. Barnes*, 189 F. App'x 941, 943 (11th Cir. 2006) (explaining that a "shooter may have discharged [a] gun intending not to make anyone apprehensive and intending not to hit anyone" (alteration added)); *Scottsdale Ins. Co. v. Klub Kutter's Bar & Lounge, LLC*, No. 17-cv-61321, 2018 WL 1933702, at *6 (S.D. Fla. Apr. 24, 2018) (refusing to "assume that [] individuals . . . intended to touch, strike or cause bodily harm" when they engaged in a fight and shooting that resulted in a stampede that injured bystanders (alterations added)); *AIX Specialty Ins. Co. v. Sombreros, LLC*, No. 17-cv-843, 2018 WL 1635643, at *6 (M.D. Fla. Apr. 5, 2018) (noting the lack of "allegations regarding whether [a] shooter intended to shoot someone or whether the gun was fired accidentally" (alteration added)); *Scottsdale Ins. Co. v. Tuckers Lounge Inc.*, No. 09-22644-Civ, 2010 WL 11606308, at *4 (S.D. Fla. Mar. 22, 2010) (concluding that it was possible an injured party "was struck by a stray bullet or a bullet intended for another," and therefore was not the victim of an assault or battery); *Burlington Ins. Co. v. Coa-Dal Sec. Agency, Inc.*, No. 07-22647-Civ, 2008 WL 11333513, at *4 (S.D. Fla. July 30, 2008) (same).

[8] Even if state tort law were to apply, Defendants correctly state that Florida law would lead to the same conclusion. "Florida courts have determined that an 'offensive contact' constitutes a battery as a matter of law" — so long, at least, as the "'offensive contact'" is made intentionally. (Mot. 6 (citing *AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1341 (M.D. Fla. 2019) ("Florida law requires no intent to harm, only an intent to make [] unwanted contact." (alteration added); other citations omitted)).

[9] Plaintiff quotes an Eleventh Circuit case for the broad proposition that, if a "complaint can reasonably be read as alleging that the injuries were negligently caused, . . . the doubt must be resolved in favor of finding a duty to defend." (Resp. 4 (alterations adopted; quoting *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1297 (11th Cir. 2006)). That quote, however, is not a legal holding; it is the Eleventh Circuit's interpretation of an insurance policy that defined assault and battery more narrowly than the General Liability Policy does here. *See Hartford Acc. & Indem. Co.*, 466 F.3d at 1296–97 (addressing a policy that excluded "coverage for bodily injury . . . only if the injury was expected or intended from the standpoint of the insured" (alteration added; quotation marks and emphasis omitted)); (*see also* General Liability Policy 83).

7

intentionally struck Cardenas, regardless of whether he intended to harm Cardenas.

Against this backdrop, the Cardenas Complaint — on its own — is insufficient to show that the exclusion applies. (*See generally* Cardenas Compl.). Cardenas alleged only that Plaintiff's employee "physically struck [him] numerous times" — leaving open the possibility the employee struck Cardenas unintentionally or involuntarily, without intending to make contact at all. (*Id.* ¶ 11 (alterations added)); *cf. Colony Ins. Co*, 189 F. App'x at 943 (explaining that, despite firing a gun, a shooter may not have intended "to make anyone apprehensive" or "to hit anyone").

Nonetheless, considering the Cardenas Complaint alongside the Report and Affidavit — which Plaintiff urges the Court to do — removes any doubt as to whether Plaintiff's employee acted with intention. According to that document, Plaintiff's employee confronted Cardenas, "punch[ed] [Cardenas] on the back of his head as he was leaving the store[,]" and continued striking him until Cardenas was unconscious. (Composite 8–9 (alterations added)). This leaves no genuine dispute of fact as to whether Plaintiff's employee intentionally struck Cardenas.

Perhaps recognizing it cannot escape this conclusion, Plaintiff offers an alternative explanation for its employee's actions: self-defense. (*See* Resp. 12–14). According to Plaintiff, its employee "was acting in self[-]defense, and as such, his actions were neither 'intentional' [n]or 'voluntary.'" (*Id.* 12–13 (alterations added; citation omitted)).[10] In support of this proposition, Plaintiff cites only one case addressing self-defense in a completely different context. (*See id.* 13 (citing *Engle v. Isaac*, 456 U.S. 107, 108 (1982))). In *Engle v. Isaac*, the Supreme Court concluded

---

[10] As factual support, Plaintiff points to a statement in the Report and Affidavit indicating Cardenas touched its employee's face and its employee felt "threatened[.]" (Resp. 13 (alteration added; quoting Composite 9)). Even more dubiously, Plaintiff argues its employee's "feeling of being threatened is bolstered even more by the fact that [] Cardenas is a registered sex offender." (*Id.* (alteration added; citing Composite 11)). Yet, Plaintiff neither argues nor alleges that its employee was aware of this during the confrontation or that Cardenas acted in a way that might make his alleged sex-offender status relevant. (*See generally id.*).

8

a habeas petitioner stated a "colorable constitutional claim" that the Due Process Clause requires the State to disprove self-defense where a crime requires a "voluntary" *mens rea*. 456 U.S. at 121–22 (noting that some "courts have rejected this type of claim" (footnote call number omitted)). This holding has no bearing on whether an act is "voluntary" or "intentional" under the terms of a private insurance contract like the General Liability Policy.

To the contrary, Florida courts have repeatedly concluded "that self-defense is not an exception to [an] intentional acts exclusion[.]" *State Farm Fire & Cas. Co. v. Marshall*, 554 So. 2d 504, 505 (Fla. 1989) (alterations added) (noting that "such acts of self-defense are undeniably intentional and have been held to be embraced within intentional act exclusions by a majority of courts" (collecting cases));[11] *see also Cabezas ex rel. Ferrer v. Fla. Farm Bureau Cas. Ins. Co.*, 830 So. 2d 156, 158 (Fla. 3d DCA 2002) (concluding that a bodily injury exclusion applied where an individual either struck another without intending to harm him or intentionally struck another "based upon an erroneous belief that he was an assailant"); *State Farm Fire & Cas. Co. v. Caldwell*, 630 So. 2d 668, 669 (Fla. 4th DCA 1994) ("If one accepts the notion at all that it is reasonably necessary to strike an aggressor with force enough to break a nose and cheekbone, it is hardly acceptable to contend that an injury to the aggressor is not intended. If the injury is not intended, why attempt an act so calculated to injure?"). Thus, even if Plaintiff's employee was acting in self-defense, the assault and battery exclusion would still apply.

To summarize, the Report and Affidavit makes clear that, regardless of whether he was

---

[11] In reaching this conclusion, the Florida Supreme Court emphasized that "the sanctity of the parties to freely contract prevails[,]" and "the clear terms of the policy control" in the absence of language excluding self-defense. *Marshall*, 554 So. 3d at 505–06 (alteration added; emphasizing that a court should not "rewrite a policy . . . to provide coverage where the clear language of the policy does not"). Here, as Defendants point out (*see* Reply 7), the General Liability Policy expressly defines an "assault" as an act taken "whether or not provoked" (General Liability Policy 83).

provoked or intended to injure Cardenas, Plaintiff's employee intentionally or voluntarily made offensive contact with Cardenas.  The General Liability Policy's assault and battery exclusion therefore applies, and Westchester Surplus has no duty to defend Plaintiff against Cardenas's suit.

*Liquor Liability Policy.*  Next, the Court turns to the Liquor Liability Policy.  The Liquor Liability Policy imposes on Illinois Union an obligation to defend Plaintiff against suits where liability "is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (Liquor Liability Policy 9).  The Policy also limits its coverage to damages resulting from "injury" that is the "direct result of selling, serving or furnishing of any alcoholic beverage[.]" (*Id.* 31 (quotation marks omitted; alteration added)).

According to Plaintiff, the Policy applies because Cardenas's claim arises from an injury he suffered while attempting to shoplift beer from Plaintiff's store.  (*See* Compl. ¶¶ 21–27).  Defendants disagree, arguing the Policy is not triggered because "Cardenas'[s] theory of liability . . . is not based on or tied to the particular item he may have been shopping for on the date of the underlying incident." (Mot. 12 (alterations added); *see also* Reply 9–10).  Defendants are again correct.

Plaintiff insists Cardenas's injury can be fairly understood as the direct result of Plaintiff's decision to sell alcohol.  (*See* Resp. 8–9).  Perhaps.[12]  But the Liquor Liability Policy's narrow definition of "injury" is not its only restriction on coverage.  As explained, the Policy separately limits its coverage — including its duty to defend — to suits where "liability for such 'injury' is imposed on the insured by reason of" the sale of alcohol.  (Liquor Liability 9).  Consequently, it is

---

[12] Because the Court concludes liability is not imposed "by reason of" Plaintiff's sale of alcohol, the Court need not address whether Cardenas's injury was the "direct result" of such sales.  (Liquor Liability Policy 9, 31).  Nor does the Court address whether Plaintiff properly invokes the fact that alcohol was involved in Cardenas's injury.  (*See* Mot. 12).

insufficient that alcohol be present at, or even involved in, an injurious incident. The underlying complaint must "allege a theory of liability connected with selling, serving or furnishing of alcohol[ic] beverages." *Holmes v. Mt. Vernon Fire Ins. Co.*, No. 08-cv-415, 2009 WL 10669949, at *3 (M.D. Fla. June 22, 2009) (alteration added).[13]

Here, no such theory arises. As Defendants explain, Cardenas's theory of liability turns on the negligent hiring, training, and retention of Plaintiff's employee. (*See* Mot. 12 (citing Cardenas Complaint 1–2)). The fact that Cardenas happened to be shoplifting alcohol at the time of his injury, as opposed to any other item, is irrelevant to this theory. The invocation of alcohol in this case "is simply the use of a 'buzz word' [and is] insufficient to trigger [Illinois Union's] duty to defend." *Holmes*, 2009 WL 10669949, at *3 (alterations added; citations omitted).

Undeterred, Plaintiff argues broadly, and unconvincingly, that the Cardenas Complaint alone "alleges facts that fairly and potentially bring the action within the Liquor Liability Policy Coverage." (Resp. 7 (alteration adopted; quotation marks, emphasis, and citations omitted)). It contends that, because Illinois Union knew Plaintiff sold alcohol, it should be presumed that any theory of liability leveled against Plaintiff may involve liquor liability. (*Id.* 6–7). In other words, Plaintiff argues that any time a suit involves a customer at a store that sells alcohol, a liquor liability policy would apply if the complaint does not deny alcohol was involved in the customer's injury. This cannot be.

Florida law requires "the complaint [to] allege[] facts that *fairly* and potentially bring the

---

[13] This statement of the law is congruent with Plaintiff's cited case, *Founders Insurance Company v. Cortes-Garcia*, No. 10-cv-02286, 2012 WL 2505917 (M.D. Fla. June 28, 2012). (*See* Resp. 9). As Defendants point out (*see* Reply 11), the theory of liability in that case was that a business had been "negligent in selling, serving, and furnishing alcoholic beverages to patrons who became intoxicated . . . and became involved in a fight" — a theory of liability that clearly implicates the sale of alcohol, *Founders Ins. Co.*, 2012 WL 2505917, at *8 (alteration added).

suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005) (alterations and emphasis added; citations omitted). Plaintiff's attempt to stretch the Cardenas Complaint's allegations to include omitted, unsupported, or potential facts goes far beyond a fair reading of that pleading.

At bottom, for Plaintiff to obtain coverage, the Liquor Liability Policy requires that Cardenas's theory of liability — and not just the underlying incident — implicate Plaintiff's selling of alcohol. Because no fair reading of the Cardenas Complaint permits such an inference, the Liquor Liability Policy does not apply.

## IV. CONCLUSION

Because the General Liability Policy's assault and battery exclusion applies, and the Liquor Liability Policy does not apply, it is

**ORDERED AND ADJUDGED** that Defendants, Westchester Surplus Lines Insurance Company and Illinois Union Insurance Company's Motion for Final Summary Judgment **[ECF No. 58]** is **GRANTED**. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 27th day of August, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record